Opinion by
Will-son, J.
§531. Contract; parol evidence to explain ambiguity in a written guaranty; construction of contracts; rules as to; case stated. John Looney, a resident of Mitchell county, Texas, purchased of Le Geirse & Co. a bill of goods, amounting to $522.61, on a credit of ninety days, bearing interest at ten per cent, per annum, and payable in Galveston, Texas. This contract was in writing, signed by John Looney. It was embraced in four separate sheets of paper numbered consecutively, 1, 2, 8, 1, the four sheets evidently being parts of one and the same transaction and contract. On a similar sheet of paper numbered 5, and bearing the same date of the other sheets, appears the following obligation signed by E. H. Looney, to wit:
“Colorado, November 11, 1882.

“Messrs. Le Geirse & Co.:

“ Gents —I will be responsible for the amount bought by my brother John Looney.”
*478 These five sheets of paper were delivered to H. Groos, Le Geirse & Oo.’s drummer, in Mitchell county, and were by him forwarded, pinned together and inclosed in an envelope, to Le Geirse & Oo., at Galveston, who thereupon shipped the goods therein ordered to John Looney, at Colorado, who received the same, and has never paid therefor. Le Geirse & Oo. brought this suit against John and E. H. Looney jointly, in the county court of Galveston county, to recover the amount of said bill of goods and interest, the foundation of said suit being the contracts evidenced by the said five sheets of paper. John Looney made no defense. E. H. Looney, in due form, pleaded his privilege to be sued in Mitchell county. This plea was overruled, the court holding that the five sheets of paper constituted one and the same contract, upon which the defendants were jointly liable, and that, by the terms of said contract, the suit was maintainable against each of them in Galveston county. Plaintiffs recovered judgment for their debt and interest against both defendants.
Upon the trial of E. H. Looney’s plea of privilege, the court, over his objections, permitted two of the members of the plaintiff firm to testify that said firm received said five sheets of paper pinned together, inclosed in an envelope, by mail, from their agent, Groos, and that said firm regarded the said five sheets as embracing but one and the same contract, and shipped the goods ordered therein on the faith of the guaranty of E. H. Looney, and would not have shipped the same without such guaranty, and that these were the only goods ever ordered of said firm by said John Looney. Plaintiffs also read in evidence on the trial of said plea, over defendant’s objections, the contents of said five sheets of paper. The admission of the above stated testimony is assigned as error. It is contended that “there is nothing contained in either of the documents, the one signed by John Looney and the other by E. H. Looney, which connects either with the other, so as to make them both relate to and form the *479 basis of the same contract, and that it was not competent to connect the two for that purpose by parol testimony.” In treating upon a contract of this nature Mr. Abbott says: “The form of the instrument is not mute-rial; but if made out by several papers, they must refer to each other in such a manner as to show that they are parts of the same contract, requiring nothing to be supplied for this purpose by verbal evidence except the identity of the documents.” [Trial Ev. p. 472, sec. 2.] Considering the foregoing text alone, and construing it literally, it would perhaps exclude parol evidence in this case, connecting or tending to connect the obligation of R. H. Looney with the indebtedness of John Looney, so as to make the two contracts one and the same. But, we think, this text should not be so considered or construed. Contracts of suretyship and guaranty are to be construed the same as other contracts, and the same rules are to be applied in ascertaining the intention of the parties. [Brandt on Sur. and Guar. § 78.] The true rule for construing all contracts is to give effect to the intention of the parties, as expressed in the instrument, read in the light of the surrounding circumstances, and when an ambiguity arises which the contract itself does not explain, parol evidence of the situation and surroundings of the parties, and the construction which they have put upon it, is admissible. As has been well said in a case similar to this one: “ It is obvious that we cannot decide that question” (the extent of a guaranty) “upon the mere construction of the document itself, without looking at the surrounding circumstances to see what was the subject-matter which the parties had in their contemplation when the guaranty was given. It is proper to ascertain that for the purpose of seeing what the parties were dealing about; not for the purpose of altering the terms of the guaranty by words of mouth passing at the time, but as part of the contract of the parties, in order to determine what was the scope and object of the intended guaranty. Having done that, it will be proper *480 to turn to the language of the guaranty to see if that language is capable of being construed so as to carry into effect that which appears to have been really the intention of both parties.” [Brandt on Sur. and Guar. § 130.]
In the case under consideration, the obligation of R. H. Looney is ambiguous. It refers to no particular transaction, but binds him generally to make good the amount bought by John Looney of the plaintiffs. It fixes no amount, no time, no limit of any character. It would cover any purchase made by John Looney of the plaintiffs, past, present or future, of any kind of property, upon any terms, and to any extent as to amount. But it is not claimed by either party that this obligation is so unlimited. It is virtually conceded that it extends no farther than to the indebtedness of John Looney involved in this suit. Appellant, however, contends that it does not embrace said indebtedness to the extent, and upon the terms, contracted by John Looney. How is this question to be determined ? By ascertaining the intention of the parties. That intention is not manifest from the obligation itself. How, then, is it to be ascertained? By considering the situation of the parties, and all the circumstances connected with the contract and bearing upon it, just as the intention of parties in doing any other act is arrived at. These external circumstances discovering the intention may be shown by parol testimony, not for the purpose of varying or in any way affecting the obligation of the contract, but, on the contrary, for the purpose of giving it full force and effect in accordance with the real intention of the parties when making it. Now, in this case, we think it was competent to show by parol evidence that the guaranty of R. H. Looney had reference to, and was a part of, the contract of John Looney, and was so understood and acted upon by the parties concerned. This being shown — the two contracts being viewed as one and the same,—the contents of the five sheets of paper being read and considered together, the extent of the guaranty, its object *481 and purpose, and the subject-matter to which it relates, are explained, and the real intention of the parties disclosed. We hold, therefore, that the court did not err in admitting the testimony objected to upon the trial of the plea of privilege. It was competent to show the intention of the parties to the guaranty, which intention was not fully manifest from the contract itself. We are further of the opinion that the trial judge was warranted by the evidence in holding that the five sheets of paper constituted but one contract, and evidenced a joint liability on the part of John and R. H. Looney for the indebtedness to Le G-eirse & Co.
§ 532. Guaranty; extent of liability of guarantor; effect of, as to venue of suit. If, then, the guaranty of R. H. Looney is a part of the contract of John Looney, it is evident that its legal effect is to render R. H. Looney responsible for the amount of John Looney’s indebtedness, according to the terms and conditions ofi the contract of purchase. Such is the plain import of the guaranty. It is an obligation to make good the contract of John Looney in all particulars and to the full extent thereof. It covers the interest stipulated to be paid, and it undertakes that the contract shall be performed in ■Galveston county. It was not error, therefore, to overrule the defendant’s plea of privilege [R. S. 1198, sub. 5], nor to adjudge interest against him according to the ■stipulation in the contract.
§ 533. Pleading; plaintiff may adopt and recover on defendants pleading, when. Whilst it is true that the •original petition charged the defendants jointly, as principals, still, when defendant R. H. Looney, in his answer, set up facts which showed that he was liable as a guarantor, and not as a principal debtor, the plaintiffs thereupon, in a supplemental petition, conceded that he was a ■guarantor, and sought relief against him as such, and the judgment rendered against him was in accordance with his own pleading, and in accordance with the evidence. In this there was no error.
*482 February 11, 1885.
§ 534. Interest; recoverable against guarantor, when. It is objected that the guaranty did not authorize the judgment against R H. Looney for the interest contracted to be paid by John Looney, and the case of Vogelsang v. Mensing [W. & W. Con. Rep. § 1166] is cited in support of this objection. That case is not applicable to the facts of this case. In that, the contract of guaranty was separate and distinct from the contract of the principal debtor, and did hot embrace the interest agreed to be paid by the principal debtor, the contract of the principal being subsequent to the guaranty. In this case the contract of guaranty was contemporaneous with, and a part of, the contract of the principal debtor, the two contracts in fact and in law being one and the same.
Affirmed.